JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Aikeem Chambers, appeals his conviction and sentence for rape, gross sexual imposition and kidnapping. For the reasons set forth below, we affirm the finding of guilt, vacate the sentence, and remand for resentencing.
 {¶ 2} Appellant was indicted by the Cuyahoga County Grand Jury on five counts of rape, two counts of gross sexual imposition and one count of kidnapping. Prior to trial, the State nolled all but one of the rape counts as well as one of the gross sexual imposition counts. The case proceeded to a jury trial on three counts: rape, gross sexual imposition and kidnapping.
 {¶ 3} At the conclusion of the State's case-in-chief, the defense made a Crim.R. 29 motion for acquittal, which the trial court denied. The defense rested without presenting any witnesses on its behalf and renewed its Crim.R. 29 motion for acquittal, which the trial court again denied.
 {¶ 4} The jury returned a guilty verdict on the three counts. Appellant was thereafter sentenced to a total eight-year prison term: five years on the rape charge, to be served consecutively to three years on the kidnapping charge and six months on the gross sexual imposition, to be served concurrently with the rape and kidnapping sentence. Appellant was also labeled a habitual sexual offender.
 {¶ 5} At trial, the victim, Tonya Simmons, testified as to the events which gave rise to the charges. Simmons, a twenty-year-old mentally challenged woman, explained that at the time of the offense, December 22, 2001, she resided on the west side of Cleveland with her mother. Having mainly grown up on the east side of Cleveland, Simmons would often travel by bus to the east side to visit a friend. On the date of the incident, Simmons had done just that.
 {¶ 6} Simmons explained that after she got off the bus she went to a nearby convenient store to purchase snacks. While Simmons was in the store, two men she had never seen before started talking to her. Simmons testified that after she left the store and started walking to her friend's house, one of the males she had previously encountered in the store approached her from behind, while the other male from the store pulled up alongside where she was walking in a grey Lincoln car.
 {¶ 7} Simmons testified that the male who approached her on the sidewalk attempted to pull her into the Lincoln, but she resisted. Simmons explained that the male then pulled her down the street, approximately seven blocks, and took her in the backyard of a house. The man who grabbed Simmons had previously told her that his name was "James."
 {¶ 8} Once behind the house, "James" held Simmons while the driver of the Lincoln kissed her neck and put his hands down her pants. Eventually, "James" pushed her to the ground, which was wet, and removed her pants. Simmons explained that after "James" removed her clothing he raped her. When "James" finished, he wiped his penis on Simmons' pants. Simmons identified appellant in court as "James" and the man who raped her.
 {¶ 9} After the rape, Simmons put her clothes back on and went to her friend's house, where she told her friend and her friend's parents what had happened. The friend's mother called the police.
 {¶ 10} Officer Richard Rusnak of the Cleveland police department responded to the scene and spoke with Simmons. After describing the incident, Simmons directed Officer Rusnak to the crime scene, where he attempted, to no avail, to interview neighbors. Officer Rusnak then transported Simmons to the hospital.
 {¶ 11} Laura Sweeney, a registered nurse, treated Simmons in the emergency room. Sweeney administered a rape evidence kit on Simmons and collected her clothing. The rape evidence kit and clothing were subsequently submitted to the Ohio Bureau of Criminal Identification ("BCI") for processing. Stacey Violi, a forensic scientist with BCI, testified that, after testing, semen was found in two stains on Simmons' pants. The semen from Simmons' pants was compared to a known standard collected from appellant; Violi opined that the DNA contained in the stains on Simmons' pants matched appellant's DNA.
 {¶ 12} As part of the investigation, a photo array was compiled by Detective Pamela Berg of the Cleveland police department sex crimes unit. Detective Berg testified that Simmons identified appellant from the photo array as her attacker. Detective Berg further testified that upon his arrest, and after being advised of and waiving his constitutional rights, appellant provided a written statement. In that statement, appellant denied raping Simmons, or anyone, but indicated that he deals drugs and has sex with "crack heads" in exchange for drugs.
 {¶ 13} In his first and second assignments of error, appellant contends that the evidence was insufficient and against the manifest weight, respectively. We disagree.
 {¶ 14} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 15} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing State v.Thompkins (1997), 78 Ohio St.3d 380, 390, 1997-Ohio-52,678 N.E.2d 541 (Cook, J., concurring).
 {¶ 16} "[B]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA0064625.
 {¶ 17} When a defendant asserts that his conviction was against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340, 515 N.E.2d 1009. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 18} R.C. 2907.02(A)(2) governs rape and provides that: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 19} R.C. 2907.05(A)(1) governs gross sexual imposition and provides that: "No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies:
 {¶ 20} "(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."
 {¶ 21} R.C. 2905.01(A)(2) and (A)(4) govern kidnapping and provide that:
 {¶ 22} "No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 23} "* * *
 {¶ 24} "(2) To facilitate the commission of any felony or flight thereafter;
 {¶ 25} "* * *
 {¶ 26} "(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]"
 {¶ 27} The gravamen of appellant's contention in these assignments of error is that Simmons' testimony was not credible because there was neither evidence of dirt or mud being on her clothing, despite Simmons' testimony that the ground was wet, nor physical injuries to Simmons (i.e., bruising or lacerations). After reviewing the record and weighing the evidence and all reasonable inferences, we do not find that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 28} Initially, we note that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967),10 Ohio St. 2d 230, 227 N.E.2d 212. There was substantial evidence upon which the trier of fact based its verdict and we will not substitute our judgment for that of the jury. In particular, the scientific evidence linked appellant to this crime, to wit: appellant's semen was found on Simmons' pants. Simmons described to the jury how that came to be.
 {¶ 29} Simmons testified that as she was walking to her friend's house she was encountered by appellant and another man; appellant approached her from behind while the other man was driving alongside the sidewalk in a grey Lincoln. She described how appellant attempted to pull her into the Lincoln, but she resisted. Simmons explained that appellant then pulled her down the street, approximately seven blocks, to another street, where he took her behind a house. Once behind the house, appellant held Simmons while the driver of the Lincoln kissed her neck and put his hands down her pants. Eventually, appellant pushed Simmons to the ground, removed her pants, and raped her. When appellant finished, he wiped his penis on Simmons' pants.
 {¶ 30} That evidence supports the finding that appellant engaged in sexual conduct and contact by force with Simmons and, thus, supports the rape and gross sexual imposition charges. The evidence further supports the finding that appellant removed Simmons, by force, from the place where she was found and restrained her liberty for the purpose of engaging in sexual activity with her against her will and, thus, supports the kidnapping charge.
 {¶ 31} Based upon the aforementioned, appellant's conviction was not against the manifest weight of the evidence and, thus, his Crim.R. 29 claim of insufficiency of the evidence also fails, and his first and second assignments of error are overruled.
 {¶ 32} In his third assignment of error, appellant contends that the trial court erred by not merging the kidnapping and rape charges. Appellant argues that the kidnapping and rape were allied offenses and part of the same transaction. We disagree.
 {¶ 33} In State v. Logan (1979), 60 Ohio St.2d 126,397 N.E.2d 1345, the Supreme Court of Ohio established guidelines to determine whether kidnapping and rape are committed with a separate animus so as to permit separate punishment under R.C.2941.25(B). In Logan the court held that "where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions." Id. at paragraph (a) of the syllabus. The Logan court also recognized that where the asportation or restraint "subjects the victim to a substantial increase in risk of harm separate and apart from * * * the underlying crime, there exists a separate animus." Id. at paragraph (b) of the syllabus.
 {¶ 34} In Logan, the court found no separate animus to sustain separate convictions for rape and kidnapping. In that case, after the victim refused to accept some pills, the "defendant produced a knife, held it to her throat, and forced her into an alley. Under such duress, she accompanied him down the alley, around a corner, and down a flight of stairs, where he raped her at knifepoint." Id. at 127.
 {¶ 35} However, in State v. Lynch, 98 Ohio St.3d 514,2003-Ohio-2284, 787 N.E.2d 1185, the victim was lured into the perpetrator's apartment and then moved to his bedroom, where the victim ate popcorn and watched movies before being raped. The Supreme Court, in upholding the conviction for rape, found that the movement was substantial, that the confinement was secretive because it took place inside the apartment, and that the restraint was prolonged. Id. at 536.
 {¶ 36} In State v. Moore (1983), 13 Ohio App.3d 226,468 N.E.2d 920, a case somewhat similar to the within case, the victim was taken from a bus stop and forced to walk one block to a shed, where she was raped. The Moore court held that the five-minute walk was sufficient asportation to constitute separate conduct of the perpetrator, apart from the actual commission of the rape. Id. at 228. "While the kidnapping continued in the sense that the victim was continued to be deprived of her liberty, the kidnapping by removing her from the place where she was found to the shed was completed prior to the commission of the rape." Id.
 {¶ 37} In the instant case, the evidence shows that when appellant approached Simmons, he attempted to pull her into the Lincoln, but she resisted. Appellant then pulled Simmons down the street, approximately seven blocks, where he took her to the back of a house. It was behind that house that appellant raped Simmons.
 {¶ 38} We find that the restraint and movement of Simmons from the sidewalk and confinement behind the house was independent of, and not merely incidental to, the restraint involved in the rape. The restraint used to facilitate the kidnapping was separate from that used to facilitate the rape. Under these circumstances, we find that appellant had a separate animus to commit kidnapping.
 {¶ 39} Therefore, we find that the trial court did not err in convicting appellant of both rape and kidnapping because they are not allied offenses of similar import under the instant facts. Appellant possessed a separate animus to kidnap and rape Simmons.
 {¶ 40} Accordingly, appellant's third assignment of error is overruled.
 {¶ 41} In his fourth and final assignment of error, appellant challenges his consecutive sentences.
 {¶ 42} Until recently, R.C. 2929.14(E)(4) governed consecutive sentences and required that:
 {¶ 43} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 44} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 45} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 46} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 47} While this case was pending on appeal, the Supreme Court of Ohio, in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, relying on Apprendi v. NewJersey (2000), 530 U.S. 466, 120 S.Ct. 2348, and Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531 held that R.C.2929.14(E)(4), as well as other provisions in the Revised Code, is unconstitutional because it violates a defendant's Sixth Amendment right to a jury trial.
 {¶ 48} Pursuant to United States v. Booker (2005),543 U.S. 220, 125 S.Ct. 738, the Supreme Court of Ohio's remedy was to sever the unconstitutional provisions of the Revised Code, including R.C. 2929.14(B). After severance, judicial factfinding is not required before imposing consecutive sentences. Foster,
supra, at paragraph three of the syllabus.
 {¶ 49} Here, in sentencing appellant to consecutive sentences, the court made findings pursuant to R.C.2929.14(E)(4). Thus, Foster dictates that appellant's sentence be vacated and the case remanded for resentencing. Id. at ¶ 103-106. For that reason, appellant's fourth assignment of error is sustained.
Finding guilt affirmed; sentence vacated; case remanded for resentencing. This cause is remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, J., Concurs
Karpinski, P.J., dissents with separate dissenting opinion as to the third assignment of error